## Edward J. Smith, Appellee, v. Consolidated Coal Company, Appellant.

1. MINES AND MINERALS, § 78*—*when electricity is of excess voltage.* A mine employe came into contact with electric current generated for a motor. The motorman testified that in his opinion five hundred and fifty volts were carried, that the motor was so marked and that each of the lamps in the circuit was marked one hundred and ten volts. An electrical engineer testified that such lamps would require five hundred and fifty volts and that a person taking hold of an article charged with two hundred and seventy-five volts could let go, but not if it was charged with five hundred and fifty volts, and plaintiff testified he could not let go of the article he had. *Held,* the voltage was in excess of two hundred and seventy-five permitted by the Mining Act of 1911, § 17, J. & A. ¶ 7491.

2. MINES AND MINERALS, § 103*—*when negligent to fail to repair.* A machine repairer in a mine carried a metal file when riding on an electric motor car in the mine. The motorman found the file and placed it in the motor tool box. The fuse block above the tool box was out of order, two loose clamps therein letting the fuse come against the side of the box and the proper employe had been notified of the defective condition. The repairer in removing his file received an electric shock. *Held,* plaintiff was entitled to recover.

3. MINES AND MINERALS, § 82*—*when machinist is within protection of statute.* A machine repairer in a mine having duties requiring him to go anywhere in the mine where a machine needed repairs and to carry tools with him, on riding on an electric motor car in performance of such duties is entitled to the protection of the Mining Act of 1911, J. & A. ¶¶ 7475 *et seq.*

4. MINES AND MINERALS, § 194*—*when instructions must not ignore counts.* When a mine employe charges in a count a breach of common law duties in failure to keep appliances on an electric

---

motor car in proper repair and in other counts a violation of the Mining Act of 1911, § 17, J. & A. ¶ 7491, prohibiting the carrying in wires of voltage above a certain number of volts, defendant's instruction based on the common law counts depriving plaintiff of a right to recover under the statutory counts are properly refused.

Appeal from the City Court of East St. Louis; the Hon. ROBERT H. FLANNIGAN, Judge, presiding. Heard in this court at the March term, 1913. Affirmed. Opinion filed October 9, 1913. *Certiorari* denied by Supreme Court (making opinion final).

WISE, KEEFE & WHEELER, for appellant; MASTIN & SHERLOCK, of counsel.

D. J. SULLIVAN and F. C. SMITH, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellee, Edward J. Smith, brought this suit to recover damages for personal injuries occasioned by an electric shock received by him while in the employ and by reason of the negligence of appellant.

There were four counts in the declaration. The first alleged that appellee was employed as a machine repairer in appellant's mine, his duties requiring him to go anywhere in the mine where a machine needed repairs and carry with him tools to make such repairs; that he rode on motors with appellant's knowledge and consent and that it was the duty of appellant to provide reasonably safe motors for him to ride upon and not expose him to unreasonable danger from electric shocks and bring upon him undue peril; that appellant negligently permitted a fuse in the fuse block, upon a certain motor, to become loose and insecure, which condition caused the fuse block to become charged with a heavy current of electricity, to wit, five hundred volts; that said fuse block was in close proximity to a certain tool box in which the motorman, in charge of the motor, had placed a file appellee was obliged to have in the discharge of his duty; that in taking said file from the tool box, appellee, while in the exer-

cise of reasonable care for his own safety, came in contact with the fuse block and received an electric shock, which caused the injuries complained of.

The three other counts charged, in different forms, a violation of section 17 of the Mining Act of 1911 (J. & A. ¶ 7491), which prohibits the carrying of a voltage in the mine on trolley wires or other exposed electrical wires above two hundred and seventy-five volts; that by reason of the excessive voltage and the loose and defective condition of the fuse block, the injury was caused to appellee.

There was a plea of the general issue, a verdict for two thousand dollars and a judgment for that amount and the costs of suit.

Appellant complains that the verdict is not sustained by the weight of the evidence; that the court erred in the admission of certain testimony offered on part of appellee and in refusing to give two instructions offered by appellant.

The proofs show that on October 25, 1911, appellee was employed by appellant to repair machines used at the face in different entries for mining coal; that when he was notified the machine was out of order it was his duty to fix it. Appellant operated, in the north and south main entries of its mine, electric motors running from the bottom of the shaft to the partings and hauling cars. Certain persons about the mine were permitted to ride on the motors in attending to their duties and appellee when called to repair a machine would ride from the bottom to the parting, where the motor stopped, and continue thence on foot to the face. He carried with him some tools used by him in fixing the machine, which were usually held together by a strap. On the day in question, after he had reached a machine he was about to repair, he discovered he had left a file and went back to the motor to get it. The motorman had found the file and put it in a tool box on the motor, used by him to hold certain tools. He told appellee where it was and appellee reached in

the box, took hold of the file and attempted to remove it, when the file became connected with the current generated for the motor, and appellee was held there until the current was cut off, receiving painful injuries, which, in certain respects, permanently disabled him.

It was shown that the fuse block was just above the tool box on the motor and was out of order; that two clamps therein had become loose and let the fuse come against the side of the tool box; that appellant's electrician, whose duty it was to fix the fuse block, had been notified by the motorman of its defective condition, but had failed to remedy it. Appellant offered no evidence upon the trial and the case therefore went to the jury upon the proofs submitted by appellee alone.

It is claimed by appellant that the proofs offered by appellee failed to establish that the trolley wire carried more than two hundred and seventy-five volts of electricity, which was the limit fixed by the statute. Upon this subject, Axon, the motorman, testified that in his opinion the voltage carried was five hundred and fifty; that it was marked on a plate on the side of the motor "voltage 550;" that there were five lamps in the circuit from the trolley to the rail and the voltage marked on each lamp was one hundred and ten. Parks, an electrical engineer, stated, that if there were five lamps in the circuit from the trolley to the rail, and each light marked one hundred and ten volts, the voltage carried by the trolley, in case none of the lights were burned out, was five hundred and fifty. He also said if a person takes hold of a metal file, charged with electricity of two hundred and seventy-five volts, he can let go, but if charged with five hundred and fifty volts he cannot, unless he falls. Morton, an expert electrician, testified, if a person takes hold of a piece of metal charged with two hundred and seventy-five volts he will be able to let go. The testimony of appellee was, when he reached the file and the current struck him he could not let go; that the motorman tried

to pull him loose and could not. This proof, which was uncontradicted, appears to us sufficient to establish the fact that the voltage carried by the trolley wire was in excess of two hundred and seventy-five volts. The proofs also appear to us to show that appellant was guilty of negligence in allowing the fuse in the fuse block in question to become loose and insecure and in permitting it to so remain after having knowledge of its condition; that appellee was exposed to unreasonable and unnecessary danger thereby and was entitled to recover for his injuries under the first or common law count of the declaration.

It is also made clear by the proofs, not only that appellant permitted the trolley wire to carry a voltage in excess of that permitted by the statute but also that such excessive voltage was the proximate cause of appellee's injury.

The question is raised, however, as to whether appellee occupied such a position as to entitle him to the benefit of the provision of the Act of 1911, relating to coal mines (J. & A. ¶¶ 7475 et seq.). This act is entitled, "An act to revise the laws in relation to coal mines and subjects relating thereto, and providing for the health and safety of persons employed therein," and provides among other things, that, "For any injury to any person or property occasioned by any wilful violation of this act or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured for any direct damages sustained thereby."

The courts of this State have always held that the "Miners Act" (J. & A. ¶¶ 7475 et seq.), must receive a liberal construction, for the protection of those employed in mines, but even if such were not the rule the language of this act is broad enough to include an employe in the mine, whose work contributed so directly to the mining of coal, as did that of appellee.

Complaint is made that the court refused two instructions offered by appellant. The first of these in-

structions told the jury that if plaintiff was injured because a file which he had in his charge was placed by the motorman in the tool box, and that while plaintiff was attempting to take the file from the tool box or had taken it therefrom it came in contact with the fuse box, and thereby the plaintiff was injured, plaintiff was not entitled to recover. The second told them that if they believed from the evidence the motorman or some other servant of the company placed the file in question in the tool box of the motor, and that the plaintiff brought said file in contact with an electric current, still he cannot recover, unless they further believe from the evidence that the company or some of its officers had knowledge or notice that such file was in said tool box.

Waiving all other objections to these instructions, they were both manifestly vicious in that they deprived appellee of all right to recover under the statutory counts of the declaration. The objections made to the rulings of the court on the admission of certain evidence are few in number, of minor importance and do not appear to us to be well founded.

The judgment of the court below will be affirmed.

*Judgment affirmed.*